## St. Louis Southwestern Railway Company v. Russell.

### Opinion delivered March 21, 1896.

Stock-killing Case—Keeping a Lookout.—Under the act of April 8, 1891, declaring it the duty of all persons running trains to keep a constant lookout, and providing that railway companies shall be liable "if any person or property shall be killed or injured by the neglect of any employees of any railroad to keep such lookout," a railway company is not liable for cattle killed by a train where the engineer was on the lookout, but the fireman was not, if the engineer was so situated that he could have seen the cattle as well as the fireman.

Appeal from Columbia Circuit Court.

Charles W. Smith, Judge.

#### STATEMENT BY THE COURT.

Appellees filed their complaint, containing thirty-nine paragraphs, in each of which they alleged the negligent killing of certain live-stock, giving the description and value of each animal killed, and the respective date of the killing. They alleged a failure to comply with sec. 6350, Sand. & H. Dig., and asked for double damages. Motions were made to make more specific and to strike, but these have not been urged here. The answer was a denial of all the material

allegations, admitted the killing of certain stock, but alleged that said killing was unavoidable, and set up contributory negligence.   The trial resulted in a verdict for twenty-five hundred dollars, and judgment was entered accordingly, which we are asked to reverse.

*Sam H. West* and *Gaughan & Sifford*, for appellant.

1.   The verdict is excessive.   The testimony did not warrant double damages.   45 Ark. 295; 57 *id*. 327; 54 Fed. 301.

2.   When stock are found dead on a railroad track, there is no presumption that the death was caused by a train unless it be proved that the animal was killed.   If found off the track, there is no presumption that it was killed by a train, though its appearance may indicate that it was killed.   60 Ark. 187; 56 *id*. 551; 42 *id*. 126; 14 S. W. 1068.

3.   It was error to refuse appellant's second instruction.   57 Ark. 192 does not sustain the view of the lower court.   It is not made the duty of *both* the engineer and fireman at the same time to keep a constant lookout.   75 Ala. 466.   The failure to keep a constant lookout cannot be the basis of actionable negligence unless it causes the injury.   Prior to the act of 1891, the duty which a railroad owed to the owner of stock was to use *ordinary care*, after the stock were discovered, to avoid injuring them.   36 Ark. 607; 37 *id*. 592; 39 *id*. 413; 40 *id*. 161; 48 *id*. 366; 52 *id*. 162.   The degree of care has not been added to by the statute.   The only additional duty is that those running the train shall keep a lookout.   8 So. 793.   In this case a lookout was kept, and the stock were seen as soon as they came within the range of the headlight, and then everything possible was done to avoid the injury.   The value of these five head of stock was $450, and plaintiff sues for $900.   The judgment is at least excessive to this amount.

*Scott & Jones*, for appellees.

1. There is ample proof to sustain a much larger verdict.

2. It was not error to refuse the second instruction. 57 Ark. 192. The instruction uses the word *careful* lookout while the statute requires a *constant* lookout to be kept. 2 How. (U. S.) 376.

3. By statute, the burden of showing a constant lookout is upon the railroad company. Sand. & H. Dig., sec. 6207.

WOOD, J., (after stating the facts.) The only question we find it necessary to discuss is presented by the court's refusing to give the following asked by the appellant: "No. 2. The jury are instructed that while it is the duty of a railroad company, to the owner of stock which may have come upon its track without negligence on the part of the owner, that the employees in charge of its trains shall keep a lookout for the purposes of discovering said stock, and, after discovery, that said employees use all proper and available means to prevent the striking of said stock, still, it is not required that both the fireman and engineer in charge of a train, both at the same time, keep a constant lookout; and if the jury find that any of plaintiff's stock sued for in this action were, without plaintiff's negligence, on defendant's railroad, and were killed by its trains, and that the engineer in charge of the train was keeping a careful lookout for stock, and that he discovered said stock as soon as the light from the headlight of the engine would permit, and that, after discovering said stock, the engineer used all the means at his command to prevent the killing or striking said stock, then, as to such stock, your verdict should be for defendant, and it is not necessary that said stock be posted,"—to which refusal the appellant at the time excepted.

It was in proof that one of the engineers of appellant killed three mules and two horses of appellees, worth four hundred and fifty dollars, by running an engine over same.   It was a level, straight track where the injury occurred.   The engineer was looking ahead, and says he saw the stock as soon as the light would shine on them, so that he could see what they were.   By the light from the engine, he could see a little over two hundred or two hundred and fifty feet.   The animals, he supposed, were about two hundred feet in front when he saw them on the track.   It was impossible to prevent striking them after he saw them.   He stopped the train as soon as it was possible to do so.   He did not have time, after attempting to stop, to blow the whistle or ring the bell to scare stock off the track.   The headlight on the engine cast its light as far ahead as those in general use.   This evidence was sufficient to entitle the appellants to the instruction asked.

Under the statute (Sand, & H. Dig., sec. 6207), it is the duty of railroads to keep a *constant* lookout for persons and property upon their tracks.   Before the passage of this act, it was not negligence for railroads to fail to keep a lookout for persons on their tracks, and from the time of the decision in *Memphis & L. R. R. Co.* v. *Kerr,* 52 Ark. 162, in May, 1889, to the passage of the act of April 8, 1891, it was not negligence for railroads to keep a lookout for live stock upon their tracks.   By that act (1891), the duty of keeping a constant lookout was enjoined as to both persons and property, upon their tracks; and a failure to perform that duty, resulting in injury to another, is negligence.   The act does not designate who of the employees are to keep this constant lookout.   A literal construction of it would impose that duty upon every employee on trains running in this state; for it says:   "It is the duty of all persons run-

ning trains in this state, etc., to keep a constant lookout;
* * and if any person or property shall be killed or
injured by the neglect of *any employees* of any railroad
to keep such lookout," etc. But this would be impracti-
cable and nonsensical. We must give the statute a
reasonable construction, so as to carry out the evident
design of the legislature in the protection of persons
and property, and the prevention of accidents which
might be avoided by compliance with its provisions. A
*constant lookout* must be kept, and it is but reasonable
to suppose that it was intended that this lookout should
be kept by the engineer and fireman, as they are placed
in a position on the engine where only a lookout would
be available and effectual to accomplish the purpose in-
tended. If not kept by them, it would have to be by
some one similarly situated. While a constant lookout
is required, it certainly was not intended that both the
engineer and fireman should at the same time be keeping
such a lookout, unless the circumstances were such as
to show that it was necessary in order to avoid striking
persons or property upon the track. Where the track
is straight and level, and objects could be seen as well
by the one as the other, it would be useless to require
both to be looking out at the same time. Such, it
appears from the testimony of the witnesses set out
above, was the case here. There was no curve or
embankment, and no obstruction to interrupt the vision
of the engineer. And it does not appear that the stock
came up from the fireman's side, but that they were on
the track, and the engineer discovered them "as soon as
the light shown upon them, so that he could see what
they were, and he could see no object on the track
further than the light shone."

The court gave the following on behalf of the
appellees: "If the jury find from the evidence that, at

the time of the commission of the injuries complained of, any of the stock alleged and proved to have been killed or injured came upon defendant's railway track upon the fireman's side of the engine where the engineer, from his post or lookout, could not reasonably observe the same, then it is not sufficient for the defendant to show that said engineer performed his whole duty, as it was also at that time the duty of the fireman to have kept a lookout from his side; and the burden of proving that the fireman did keep such lookout is upon the defendant." There was proof to justify this instruction, and the court properly gave it. It should also have given the second asked by appellants, *supra*, to meet the conditions presented by the proof, where it was not necessary to show that the fireman was also keeping a lookout. The court, in another instruction, had told the jury that the statute required a "*constant lookout.*" So that the second, *supra*, could not be said to be defective because, in the first part of it, the word "*constant*" was omitted, and because, in the latter part, "careful" was used instead of "constant." Taken in connection with the others, it could not have been misleading. In another respect the instruction was responsive to and necessary to cover that phase of the evidence which tended to show that the killing of these five animals, as charged in the twenty-first count of the complaint, was an unavoidable accident. The failure to give the second instruction is the only reversible error we find in the record, and that is only applicable to the three mules and two horses in the twenty-first count of the complaint. The complaint asked, and under the evidence and instructions the jury might have found, double damages. Whether they did or not, as to the twenty-first count, it is impossible for us to say. But to remove all possible prejudice to the appellant, by the

refusal of the above instruction, if the appellees will, within thirty days, enter a remittitur for nine hundred dollars, the judgment will be affirmed; otherwise, it must be reversed, and remanded for new trial.