## KIRKPATRICK *v.* SNYDER AND OTHERS.

CONTRACT.—*Failure to Receive Goods Contracted for.*—*Notice.*—A. contracted with B. to deliver to the latter a certain number of hoop-poles, at a stipulated price, at a certain railroad station, by the last of November, B. to advance money to A. from time to time, to enable him to buy the poles, and B. to pay for the poles on final delivery. A portion of the poles were delivered on the contract, and B. advanced to A. money on the contract, more than sufficient to pay for the poles delivered. The remainder of the poles were placed by A. at said station, at a place pointed out by B., with those already delivered, and in the latter part of November A. notified B. that the poles

were ready for delivery, and requested him to receive and pay for them, which B. declined to do, saying he was not ready to ship them. Late in December, A. told B. that if the latter did not come and receive and pay for the poles, the former would not keep them longer, and B. promised to receive them in ten days. In the latter part of the following January, A. gave B. written notice to receive and pay for the poles within eight days, or he would sell them to get the money due him on the contract. In the following March, A. sold, for their full value, to C., said remainder of the poles, not counted to B. as required by the contract, B. not having offered at any time until after said sale to receive and pay for them.

*Held,* that an action of replevin by B. against C., for the poles so purchased by the latter, would not lie.

EVIDENCE.— *Opinion of Witness.*—*Replevin.*—On the trial of an action of replevin, a witness was permitted, over the defendant's objection, to give his opinion as to the amount of damages suffered by the plaintiff by reason of the detention of the property by the defendant, without stating any facts upon which he based such opinion.

*Held,* that this was error.

APPEAL from the Blackford Circuit Court.

GREGORY, C. J.—This is an action of replevin by the appellees against the appellant for "ten thousand double tight hickory hoop-poles." The defendant filed the general denial. Trial by a jury; verdict for the plaintiffs; motion for a new trial overruled.

One Miller made a contract with the plaintiffs to deliver them five thousand hoop-poles, at thirty-five dollars per thousand, and fifteen thousand at forty dollars per thousand. According to the testimony of one of the appellees, Snyder, the poles were to be delivered after seeding time (1867), at the railroad station at Hartford City. According to the testimony of Miller, they were to be delivered at the railroad station at Hartford City, by the last of November, 1867. The plaintiffs were to advance money to Miller from time to time, to enable him to buy the poles, and were to pay therefor on final delivery. About ten thousand of the poles were delivered on the contract. The plaintiffs advanced some six or seven hundred dollars to Miller on the contract. By the 25th of October, 1867, Miller placed at a point near the railroad station, pointed out by the plaintiffs, about twenty thousand five hundred and two poles,

including those counted and delivered to the plaintiffs. About the 20th of November, Miller notified the plaintiffs that the poles were ready for delivery, and the former requested the latter to receive and pay therefor. The plaintiffs declined to do so, saying that they were not ready to ship them. On the 24th of December, Miller told the plaintiffs that if they did not come and receive and pay for the poles, he would not keep them any longer. The appellees promised to receive them in ten days. On the 20th of January, 1868, Miller gave the plaintiffs written notice to come and receive the poles and pay therefor by the 28th of that month, or he would sell them to get the money due him on the contract. On the 10th of March, 1868, Miller sold the residue of the poles, about ten thousand, to the appellant, for their full value. The plaintiffs demanded the poles of the appellant, who refused to deliver them up. This suit was commenced on the 30th of March, 1868, in a day or two after the demand. The plaintiffs resided at Winchester, and at no time until after the sale to the appellant did they offer to receive and pay for the poles; and, indeed, they were never counted by Miller to the plaintiffs, as by the contract they were to be.

One of the appellees, Snyder, over the objection of the appellant, was permitted to testify that the damages to the plaintiffs by the detention of the poles by the defendant was fifty dollars. No facts were stated by the witness or others from which such a conclusion could be drawn; but it was given to the jury as a naked estimate in the opinion of the witness of the amount of the damages. The jury assessed the damages at seventy dollars and ninety-eight cents.

Excessive damages is one of the grounds stated for a new trial in the written motion therefor.

We think the evidence does not sustain the finding. Under the contract, as given by either Snyder or Miller, it was the duty of the plaintiffs within a reasonable time, on demand, to receive and pay for the poles. This they refused

to do. The property in them did not pass to the appellees by their delivery at the place pointed out, until they were counted and paid for. The refusal of the plaintiffs to receive and pay for the poles from the 20th of November until after their sale in March was an unreasonable delay and justified Miller in making the sale to the appellant.

The court erred in allowing Snyder to give his opinion as to the amount of the damages without stating any fact upon which he based that opinion.

The damages were excessive, even if the plaintiffs had been entitled to recover.

The court erred in overruling the motion for a new trial.

Judgment reversed, with costs; cause remanded, with directions to grant a new trial, and for further proceedings.

*A. B. Jetmore* and *J. Brownlee*, for appellant.